# Syllabus

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

**This syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader.**

Reporter of Decisions:
Kathryn L. Loomis

ESTATE OF DONNA LIVINGS v SAGE'S INVESTMENT GROUP, LLC

Docket No. 159692. Argued on application for leave to appeal November 10, 2020. Decided June 30, 2021.

Donna Livings brought an action in the Macomb Circuit Court against her employer, Grand Dimitre's of Eastpointe Family Dining; Sage's Investment Group, LLC, which leased space to Grand Dimitre's; and T & J Landscaping & Snow Removal, Inc., alleging negligence based on premises liability after she slipped on ice while attempting to cross the employee parking lot to get to her job. Livings's claims against T & J Landscaping were resolved through the case-evaluation process. Sage's Investment Group moved for summary disposition under MCR 2.116(C)(10), arguing that the snow and ice were open and obvious and that Livings could have avoided these conditions by parking elsewhere and using the front door instead of the employee entrance. Grand Dimitre's also moved for summary disposition. The trial court, Edward A. Servitto, J., granted summary disposition with respect to Grand Dimitre's but denied it as to Sage's Investment Group, ruling that a question of fact existed as to whether Livings would have been permitted to use the front parking lot and entrance. Sage's Investment Group sought leave to appeal, which the Court of Appeals granted. The Court of Appeals, BECKERING and SHAPIRO, JJ. (TUKEL, J., concurring in part and dissenting in part), affirmed in an unpublished per curiam opinion issued February 26, 2019 (Docket No. 339152), concluding that although the ice was open and obvious, there was a genuine issue of material fact regarding whether the hazard was effectively unavoidable. Judge TUKEL, dissenting in part, would have held that because Livings could have skipped work rather than confront the snow and ice, the hazard was not effectively unavoidable. Sage's Investment Group again sought leave to appeal. The Supreme Court ordered and heard oral argument on whether to grant the application or take other action. 505 Mich 985 (2020). After Livings's death in March 2020, her estate was substituted as the named plaintiff.

In an opinion by Justice VIVIANO, joined by Chief Justice MCCORMACK and Justices BERNSTEIN and CAVANAGH, the Supreme Court *held*:

Under the open and obvious danger doctrine, a hazard can be deemed effectively unavoidable if the plaintiff confronted it to enter their place of employment for purposes of work. In these circumstances, it is possible for a defendant to foresee that the employee will confront the hazard. The fact that the employee could have failed to report to work as required by their employer is not a reasonable alternative. Courts addressing this issue should consider whether a

reasonable person in the plaintiff's circumstances would have used any available alternatives to avoid the hazard. In the present case, because Livings's fall on the snow and ice occurred as she attempted to enter her workplace, she has raised an issue of material fact as to whether the conditions of the parking lot were effectively unavoidable.

1. To prevail on a premises-liability claim, a plaintiff must establish that the defendant owed them a duty of care. In the present context, a possessor of land owes a duty to exercise reasonable care to protect invitees from dangerous conditions on the land. This duty generally does not extend to dangerous conditions that are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them. However, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk. Special aspects of an open and obvious hazard can give rise to liability when the danger is unreasonably dangerous or when the danger is effectively unavoidable. The standard for effective unavoidability is that a person, for all practical purposes, must be required or compelled to confront a dangerous hazard. The Second Restatement of Torts, after setting out the general standard for premises liability, explains that a premises possessor might expect a reasonable person to confront an obvious hazard when the advantages of doing so would outweigh the apparent risk, and it offers as an example an illustration in which a premises owner is liable to an employee of its lessor when the employee is injured by falling on an obviously slippery waxed stairway when the employee's only alternative to taking the risk was to forgo employment. Other jurisdictions follow this approach, and Michigan's open and obvious danger jurisprudence has long been informed by, and remains consistent with, the Restatement. In Michigan, it is reasonable to anticipate that many businesses will remain open even during bleak winter conditions. A landlord cannot expect that every one of its tenant's employees will be permitted to stay home on snowy days. Therefore, it is reasonable to anticipate that a person will proceed to encounter a known or obvious danger for purposes of their work. Accordingly, an open and obvious hazard can become effectively unavoidable if the employee confronted it to enter their workplace for work purposes. This standard's application will depend on the facts of the case, but the key is whether alternatives were available and would have been used by a reasonable person in the employee's circumstances. If an employee could have avoided the condition through the use of due care under the circumstances, then the condition was not effectively unavoidable. Another consideration is whether the employee would need to breach the employer's policies in order to avoid the condition and what the consequences of that breach might be. What a court cannot conclude, however, is that a hazard was avoidable simply because the employee could have elected to skip work or breach other requirements of their employment.

2. In this case, there was a genuine issue of material fact regarding whether the hazard was effectively unavoidable. Livings presented evidence that snow and ice covered the entire parking lot, encompassing both the employee and customer sections. It is undisputed that Livings confronted the snow and ice in order to enter the restaurant in order to begin her shift. From this, a fact-finder could reasonably conclude that Livings confronted the condition to enter her place of employment for work purposes. Livings presented evidence that she could not have avoided the condition by parking in the customer lot because it was also covered in snow and ice, and she could not have waited until the condition had resolved without effectively skipping work, which was not a reasonable alternative. Accordingly, Sage's Investment Group has not shown as a matter of law

that any reasonable alternative would have allowed Livings to avoid the hazard. Consequently, a genuine question of material fact exists as to whether the condition here was effectively unavoidable.

Court of Appeals judgment affirmed; case remanded to the trial court for further proceedings.

Chief Justice MCCORMACK, joined by Justices BERNSTEIN and CAVANAGH, concurring, agreed in full with the majority opinion but wrote separately to express her reservations about the continued reliance on the special-aspects doctrine articulated in *Lugo v Ameritech Corp, Inc*, 464 Mich 512 (2001). She noted that the special-aspects doctrine had been widely criticized by commentators, was an unnecessary departure from the sensible and straightforward approach of the Second Restatement of Torts, had not been embraced or adopted by any other jurisdiction, and used unlikely hypothetical examples to further narrow what was already a narrow exception to the general rule of nonliability for open and obvious conditions. Given that Michigan had no state-specific need for a special rule regarding premises owners and invitees, Chief Justice MCCORMACK suggested that the Court reconsider the continued viability of the special-aspects doctrine in an appropriate case.

Justice ZAHRA, dissenting, stated that the majority opinion departed from nearly two decades of the Court's premises-liability jurisprudence by transforming the special-aspects doctrine from an objective inquiry to a plaintiff-focused inquiry encompassing the personal inclinations of each particular plaintiff encountering that condition, thereby creating the very subclass of invitees that the Court had rejected in *Hoffner v Lanctoe*, 492 Mich 450 (2012). He disagreed with the majority's endorsement of the Restatement's illustration regarding employees, which he stated was inconsistent with the Court's caselaw and would inject unpredictability into Michigan's premises-liability law by leading to inconsistent rulings based on the special circumstances of each plaintiff at issue. He would have applied the Court's well-established open and obvious danger caselaw to conclude that a person's employment is not a relevant consideration in determining whether a condition was "effectively unavoidable," reversed the Court of Appeals judgment, and remanded the case to the trial court for entry of summary disposition in favor of Sage's Investment Group.

Justice CLEMENT, dissenting, agreed with Justice ZAHRA that today's ruling deviated from *Hoffner* and its related caselaw even while purporting not to. While she was less sanguine than he was about the affirmative benefits of this area of Michigan caselaw and would be open to considering different approaches, she stated that any changes the Court adopted ought to offer greater clarity than the status quo. Because she did not believe the Second Restatement offered any improvement on Michigan law, in particular considering its inconsistencies and ambiguities regarding whether questions of duty are to be decided by the judge or the jury, she would have applied *Hoffner* to this case and reversed the Court of Appeals.

Justice WELCH did not participate in the disposition of this case because the Court considered it before she assumed office.

# OPINION

Chief Justice:
Bridget M. McCormack

Justices:
Brian K. Zahra
David F. Viviano
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh
Elizabeth M. Welch

FILED June 30, 2021

## STATE OF MICHIGAN

## SUPREME COURT

ESTATE OF DONNA LIVINGS,

       Plaintiff-Appellee,

v

No. 159692

SAGE'S INVESTMENT GROUP, LLC,

       Defendant-Appellant,

and

T & J LANDSCAPING & SNOW
REMOVAL, INC., and GRAND
DIMITRE'S
OF EASTPOINTE FAMILY DINING,

       Defendants.

BEFORE THE ENTIRE BENCH (except WELCH, J.)

VIVIANO, J.

Michigan, we have explained, "is prone to winter," and "with winter comes snow and ice accumulations . . . ." *Hoffner v Lanctoe*, 492 Mich 450, 454; 821 NW2d 88 (2012). But for most Michiganders, winter weather does not mean an automatic holiday from their jobs. Therefore, snow, ice, and other wintry elements sometimes must be confronted to get to work. That is what happened in this case, when Donna Livings[1] slipped on ice in her employer's parking lot as she headed in to begin her shift. Generally, when an injury occurs because of an open and obvious condition, landowners in Michigan are not liable because they have no duty to protect against those hazards. An exception exists, however, when the hazard is effectively unavoidable. The question here is whether a hazard one must confront to enter his or her place of employment should be considered effectively unavoidable. We hold that an open and obvious condition can be deemed effectively unavoidable when a plaintiff must confront it to enter his or her place of employment for work purposes. However, in assessing this question, it is still necessary to consider whether any alternatives were available that a reasonable individual in the plaintiff's circumstances would have used to avoid the condition. In the present case, we agree with the Court of Appeals that a genuine issue of material fact exists regarding whether the snow and ice were effectively unavoidable.

## I. FACTS

On February 21, 2014, Livings pulled into the parking lot at her workplace, Grand Dimitre's of Eastpointe Family Dining, which leased the space from defendant Sage's

---

[1] After Donna Livings's death in March 2020, her estate was substituted as the named plaintiff.

Investment Group, LLC.[2] She testified that she arrived shortly before 6:00 a.m. and parked in the employee lot, choosing the closest space not covered with snow, about 70 feet from the back door. Another employee had already arrived by that time and had parked in the front lot for customers. Testimony from Livings, another employee, and Ayman Shkoukani, one of the restaurant's owners, indicated that employees were required to park in the rear lot and use the back door to enter the building. The whole lot, Livings said, was covered with packed snow and ice and looked like "a sheet of ice." Neither Livings nor Debra Buck, a fellow employee who had arrived earlier that morning, saw any salt on the lot. Buck testified that she also struggled to cross the parking lot because of the conditions.

After parking, Livings got out of her car, took a few steps, and fell. When she tried to stand up, she kept slipping. She attempted to crawl across the lot but could not reach the back door. Eventually, she made it to the front door, called the restaurant, and was let in by Buck. In pain the following day, Livings sought medical treatment and subsequently underwent three surgeries.

Livings sued defendant under a premises-liability theory, claiming that it failed to protect her from the dangerous accumulation of snow and ice in the lot. In the trial court, defendant moved for summary disposition under MCR 2.116(C)(10). It argued that the snow and ice were open and obvious and that Livings could have avoided these conditions

_____

[2] Although Grand Dimitre's is a named defendant, it is not involved in the appeal before the Court, and therefore only Sage's Investment Group, LLC, will be referred to as "defendant" in this opinion. In the courts below, the parties also disputed whether defendant had sufficient possession or control over the premises to be liable for Livings's injury. The Court of Appeals held that defendant exercised enough control with regard to snow removal and salting. That holding is not presently before the Court, and we make no decision as to its correctness.

3

by parking elsewhere and using the front door. The trial court denied the motion, finding that a question of fact existed as to whether Livings would have been permitted to use the front parking lot and entrance.

The Court of Appeals affirmed in a split decision. *Livings v Sage's Investment Group, LLC*, unpublished per curiam opinion of the Court of Appeals, issued February 26, 2019 (Docket No. 339152). The majority noted that the ice was open and obvious, as Livings admitted to seeing it. *Id*. at 9. But the majority concluded that a genuine issue of material fact existed regarding whether the hazard was effectively avoidable. *Id*. at 9-11. The majority explained that the front and rear lots were connected as one and, according to both Livings and Buck, the entire surface was covered in snow and ice. *Id*. at 10. The majority held that whether the hazard was effectively unavoidable constituted a question for the fact-finder. *Id*. at 10-11. The trial court's decision was affirmed. *Id*.

Judge SHAPIRO concurred, explaining that it would have been inconsistent with "substantive justice" to hold, as Judge TUKEL's partial dissent would have done, that the condition was avoidable because Livings "could have skipped work and suffered the consequences to her employment." *Id*. at 1 (SHAPIRO, J., concurring). The partial dissent cited caselaw suggesting that a plaintiff's employment is not a relevant consideration in determining whether a hazard was effectively unavoidable. The exception to this rule, according to the dissent, applies only when a court deems, "for public policy reasons," that the plaintiff's job is too important to miss, as when it involves "the safety and well-being of others . . . ." *Id*. at 3-4 (TUKEL, J., concurring in part and dissenting in part). Judge TUKEL concluded that Livings's job "lack[ed] such vital, critical importance or urgency." *Id*. at 5. The "ramifications" of missing a shift in a restaurant were simply not the same as

4

they were in the healthcare field and, even so, Livings's "presence at the restaurant was not absolutely necessary to her employer or the restaurant's patrons." *Id*. at 4 & n 5. Thus, because Livings could have skipped work rather than confront the snow and ice, the hazard was not effectively unavoidable.

Defendant sought leave to appeal, and we ordered argument on the application to address "(1) whether the plaintiff's employment is a relevant consideration in determining whether a condition is effectively unavoidable" and "(2) whether there was a question of fact concerning whether the parking lot constituted an effectively unavoidable condition." *Livings v Sage's Investment Group, LLC*, 505 Mich 985, 985 (2020).

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Bank of America, NA v First American Title Ins Co*, 499 Mich 74, 84-85; 878 NW2d 816 (2016). "A motion brought under MCR 2.116(C)(10) 'tests the factual sufficiency of the complaint.' In resolving such a motion, 'a trial court considers affidavits, pleadings, depositions, admissions, and other evidence submitted by the parties . . . in the light most favorable to the party opposing the motion.' " *Id*. at 85 (citations omitted). A movant is not entitled to judgment as a matter of law if the evidence establishes a genuine issue of material fact. *Id*.

## III. ANALYSIS

To resolve this case, we must decide whether an open and obvious hazard can be considered effectively unavoidable when a plaintiff must confront it to enter his or her place of employment for work purposes. We hold that it can. But, in analyzing the issue,

5

it is relevant whether a reasonable individual in Livings's circumstances would have used any alternatives to avoid confronting the hazard. Given this conclusion, we hold that a genuine issue of material fact exists in this case as to whether the hazard Livings confronted was effectively unavoidable.

## A. EFFECTIVELY UNAVOIDABLE

To prevail on a premises-liability claim, plaintiffs must establish that defendants owed them a duty of care. *Riddle v McLouth Steel Prod Corp*, 440 Mich 85, 95-96; 485 NW2d 676 (1992).[3] The duty element represents the legal obligation that arises from the relationship between the parties. *Bertrand v Alan Ford, Inc*, 449 Mich 606, 614; 537 NW2d 185 (1995). In the present context, a possessor of land owes a duty to exercise reasonable care to protect invitees from dangerous conditions on the land. *Riddle*, 440 Mich at 90. But this duty does not extend to dangerous conditions that are open and obvious. *Id*. at 95-96. Put differently, "where the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee . . . ." *Id*. at 96. When the evidence creates a question of fact regarding this issue, the issue is for the fact-finder to decide. *Bertrand*, 449 Mich at 617.[4]

---

[3] Plaintiffs must also show that defendants breached the duty, damages were suffered, and the breach was the proximate cause of the damages. *Id*. at 96 n 10. None of those elements is at issue here.

[4] No one here disputes that Livings was an invitee, which is one of the three classes of plaintiffs in premises-liability cases. The duty of care a defendant owes depends on the class in which the plaintiff falls, and invitees are owed the highest duty of care. *Hoffner*, 492 Mich at 460 n 8. Similarly, it is undisputed that the snow and ice in the parking lot was an open and obvious condition.

6

The concept of open and obvious dangers has evolved into a doctrine of considerable complexity. This is especially true of the exceptions to the doctrine, which we first attempted to elaborate in *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384 (2001). There, we held that "a premises possessor is not required to protect an invitee from open and obvious dangers, but, if special aspects of a condition make even an open and obvious risk unreasonably dangerous, the premises possessor has a duty to undertake reasonable precautions to protect invitees from that risk." *Id*. at 517. In a later case, we further elaborated on the "two instances in which the special aspects of an open and obvious hazard could give rise to liability: when the danger is *unreasonably dangerous* or when the danger is *effectively unavoidable*." *Hoffner*, 492 Mich at 463.

The present case involves the "special aspect" of unavoidability. In *Lugo*, we hypothesized that an effectively unavoidable dangerous condition could exist in "a commercial building with only one exit for the general public where the floor is covered with standing water. While the condition is open and obvious, a customer wishing to exit the store must leave the store through the water," and thus it is effectively unavoidable. *Lugo*, 464 Mich at 518. *Hoffner* later explained that "the standard for 'effective unavoidability' is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard. As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so." *Id*. at 469.

The only time we have applied this standard was in *Hoffner*. The plaintiff in that case slipped on the icy entrance to a fitness center, where she had a membership. *Id*. at 457. In rejecting her claim that the ice was effectively unavoidable, we stated that "[a]

7

general interest in using, or even a contractual right to use, a business's services" was not enough. *Id*. at 472. As such, we determined that the plaintiff's desire to use the gym did not force her to confront the hazard, which consequently was not effectively unavoidable. *Id*. at 473-474.

We have never considered the "effectively unavoidable" standard, as articulated in *Lugo* and *Hoffner*, in the context of plaintiffs who confronted an open and obvious danger due to their employment. In a case predating *Lugo*, however, we at least implied that employment was a consideration in determining whether an open and obvious danger could be avoided. The plaintiff in *Singerman v Muni Serv Bureau, Inc*, 455 Mich 135, 137-138, 141; 565 NW2d 383 (1997), sued an ice hockey arena after being struck in the eye by a hockey puck, claiming that the rink lacked proper lighting that would have allowed him to see and avoid the puck. It was undisputed that the poor lighting constituted an open and obvious hazard. *Id*. at 141. The question we posed was whether the condition was made unreasonably dangerous by any "unusual aspects." *Id*. at 143. In concluding that there were no such aspects, the lead opinion observed that "plaintiff was not compelled to use the rink for work, or profit, or any other overriding or substantial motivation.[5] He chose to participate in a dangerous sport under conditions he knew to be dangerous." *Id*. at 144.

---

[5] The partial dissent in *Singerman* did not dispute this point but believed that, under the circumstances, the defendants "should have anticipated that the defective lighting would cause injury" and in fact did foresee such an injury. *Id*. at 147 (MALLETT, J., concurring in part and dissenting in part). Thus, although the Court was evenly divided on the application of the standard—a point on which we have no reason to opine here—no one questioned the notion that a plaintiff's need to access the property for employment could be relevant to the special-aspects analysis.

As a result, no exception to the open-and-obvious doctrine applied. *Id*. *Singerman* thus suggested that employment may be a relevant factor in the analysis.

This view finds substantial support from other sources. Most significantly, it reflects the view of the Second Restatement of Torts. The Restatement sets out the general standard for premises liability in § 343. 2 Restatement Torts, 2d, § 343, p 215 (establishing liability if the possessor fails to protect invitees against an unreasonable risk of harm that the possessor knew or should have known about and that the possessor "should expect that [the invitees] will not discover or realize . . . or will fail to protect themselves against"). In the next section—which is to "be read together with" § 343, see *id*. at 216, comment *a*— the Restatement states that a possessor of land is not liable for injuries caused to invitees "by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." 2 Restatement Torts, 2d, § 343A, p 218; see also Prosser, The Law of Torts (4th ed), p 394 (espousing the same standard).

In the comments, the Restatement explains that a possessor might expect a reasonable person to confront an obvious hazard when "the advantages of doing so would outweigh the apparent risk." 2 Restatement Torts, 2d, § 343A, comment *f*, p 220. The following example is given:

> A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C. [*Id*., comment *f*, Illustration 5, p 221.]

9

The illustration maps almost perfectly onto the current case and appears to provide a reasonable approach to this issue.[6]

Every case that we have found addressing this issue has followed the Restatement's approach.[7] The Illinois Supreme Court, for example, engaged in an extended discussion

[6] In dissent, Justice CLEMENT suggests that the illustration offers no rationale for why the premises owner is liable in these circumstances. This ignores the rule, which itself gives a reason for the result—namely, that the premises owner could reasonably foresee that employees would risk the hazardous stairs to reach their workplaces.

[7] See *Martinez v Angel Exploration, LLC*, 798 F3d 968, 975-976 (CA 10, 2015) (noting, in a case involving this issue, that "an emerging majority of states" have adopted the Restatement's general position that the open-and-obvious doctrine does not apply when it is foreseeable that a reasonable plaintiff would confront an open and obvious danger and also noting that under Oklahoma law, a premises-liability claim would not necessarily be barred by the open-and-obvious doctrine when the plaintiff had to confront the condition " 'in furtherance of her employment' "), quoting *Wood v Mercedes-Benz*, 336 P3d 457, 460 n 8; 2014 OK 68 (2014); *Staples v Krack Corp*, 186 F3d 977 (CA 7, 1999) (applying Illinois law containing this standard); *Hale v Beckstead*, 116 P3d 263, 270-271; 2005 UT 24 (2005) (analogizing to Illustration 5 in a case in which the plaintiff appeared to have been carrying out employment duties when injured); *Shannon v Howard S Wright Constr Co*, 181 Mont 269, 273; 593 P2d 438 (1979) (citing Illustration 5 and caselaw to support the proposition that a defendant should anticipate the risk where the victim is an employee who, "to continue his employment, has no alternative but to continue facing the risk or hazard"); *Docos v John Moriarty & Assoc, Inc*, 78 Mass App 638, 642; 940 NE2d 501 (2011) ("This record therefore presents a genuine issue of fact about whether a reasonable person in Docos's position would conclude that the advantages of continuing to work in a setting more dangerous than the typical active construction site due to excessive debris would outweigh the apparent risk."); *Mammoccio v 1818 Market Partnership*, 734 A2d 23, 34; 1999 PA Super 144 (1999) (citing Illustration 5 and upholding jury conclusion that the defendant should have anticipated the risk because the plaintiff encountered it while performing employment duties); *Maci v State Farm Fire & Cas Co*, 105 Wis 2d 710, 717; 314 NW2d 914 (Wis App, 1981) (citing Illustration 5 and concluding that the defendant should have anticipated the risk from the obvious danger when the only way for the plaintiff to complete his work was to confront it), overruled on other grounds by *Rockweit v Senecal*, 197 Wis 2d 409 (1995), as recognized by *Pagel v Marcus Corp*, 313 Wis 2d 78, 84 n 2 (Wis App, 2008); cf. *LeClair v LeClair*, 204 Vt 422; 169 A3d 743; 2017 VT 34 (2017) (finding a triable issue when the defendant-grandfather instructed the plaintiff-grandson to replace a frosty roof because he should have foreseen that the plaintiff would deliberately

of § 343A and the related comments in *LaFever v Kemlite Co*, 185 Ill 2d 380; 706 NE2d 441 (1998). Like Livings, the plaintiff in *LaFever* sued the defendant for injuries that occurred while working (for a third party) on the defendant's premises. *Id*. at 383. The nub of the analysis required by the Restatement, according to the court, was whether the defendant could foresee that the plaintiff would reasonably and deliberately encounter the obvious hazard. *Id*. at 391. The evidence established that the plaintiff would need to walk through the area with the hazard in order to complete his job and that others did as well. *Id*. at 392. The court held that the defendant "could have reasonably foreseen that plaintiff would risk walking through [the dangerous condition], because it was necessary for plaintiff to fulfill his employment obligations." *Id.*[8]

---

encounter the danger and noting that this foreseeability did not depend on the jury finding on remand that an employment relationship existed—the key fact was that the defendant was in a position of authority); see generally 2 Dobbs, Hayden & Bublick, The Law of Torts (2d ed), § 276, p 90 (collecting cases and noting that "the plaintiff's decision to encounter a known risk is sometimes reasonable when the plaintiff must take the risk to fulfill an obligation or to carry out employment obligations") and *id.* (June 2020 update), p 18 (noting one case going the other way, but that decision was based on a state's specific rule for independent contractors). Tellingly, neither the parties nor the dissents have uncovered any decisions rejecting or even questioning employment as a relevant consideration in these circumstances.

[8] *LaFever* noted that other courts had held likewise. *Id.* at 394 (noting cases holding "that, in light of the 'economic compulsion' on an employee to perform his or her job, the landowner/employer had reason to expect that an employee would encounter the obvious danger rather than face the prospect of losing the job"), citing *Keller v Holiday Inns, Inc*, 107 Idaho 593, 595; 691 P2d 1208 (1984) ("The common theme . . . is the difficult position of an employee when directed by the employer to perform work which involves a dangerous condition or activity on the landowner's premises. . . . We hold that in these situations, a landowner is not relieved of the duty of reasonable care which the landowner owes to the employee/invitee for his or her protection even though the dangerous condition is known and obvious to the employee."), and *Konicek v Loomis Bros, Inc*, 457 NW2d 614, 619 (Iowa, 1990) ("Certainly [the defendant] could anticipate that the [roofing

Our open-and-obvious jurisprudence has long been informed by the Restatement. As far back as 1938, we began relying on the relevant section and comments of the First Restatement.[9]  And we have often utilized the Second Restatement since its appearance in 1965, going so far as to say that § 343 and § 343A had been "adopted" into our law.[10]  In fact, our caselaw has already incorporated one of other the illustrations listed in comment *f* to § 343A.  See *Bertrand*, 449 Mich at 624 (applying Illustration 3).

---

subcontractor that employed the plaintiff] would probably proceed in the face of obvious dangers, knowing that if they failed to do so, they could lose their jobs.").

[9] See *Goodman v Theatre Parking*, 286 Mich 80, 82; 281 NW 545 (1938), quoting Restatement Torts, § 343; see also *Ackerberg v Muskegon Osteopathic Hosp*, 366 Mich 596, 600; 115 NW2d 290 (1962) (stating that § 343 set forth the applicable standard of care for business invitees); *Zeglowski v Polish Army Veterans Ass'n of Mich, Inc*, 363 Mich 583, 586; 110 NW2d 578 (1961) (noting that the Court had "adopted" § 343 in *Nash v Lewis*, 352 Mich 488, 492; 90 NW2d 480 (1958)); *Spear v Wineman*, 335 Mich 287, 290; 55 NW2d 833 (1952) (noting that the "law is well stated" by a comment to § 343).

[10] See *Perkoviq v Delcor Homes–Lake Shore Pointe, Ltd*, 466 Mich 11, 16; 643 NW2d 212 (2002) (applying *Bertrand* and observing that in *Bertrand* we had incorporated § 343 and § 343A); *Singerman*, 455 Mich at 139 (citing comment *e* to § 343A as part of the governing law); *Bertrand*, 449 Mich at 609-614, 623-624 (describing and applying § 343 and § 343A, along with various accompanying comments to those sections, as the law of the state); *Riddle*, 440 Mich at 92-93, 95 (noting that the Court had "adopted" the original § 343 in *Ackerberg* and the revised version in *Quinlivan v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 244, 259-261; 235 NW2d 732 (1975), and that, together with § 343A, these sources "correctly define the law regarding a premises owner's duty of care to invitees"); *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 500; 418 NW2d 381 (1988) ("The duty a possessor of land owes his invitees . . . does not extend to conditions from which an unreasonable risk cannot be anticipated or to dangers so obvious and apparent that an invitee may be expected to discover them himself."), citing, *inter alia*, § 343A; *Quinlivan*, 395 Mich at 259-261 (adopting the view of an out-of-state case that found § 343 " 'controlling' " and calling the Restatement a "helpful exposition") (citation omitted).

Despite the fact that our current framework uses different terminology, we have stressed that our law remains consistent with the Restatement approach. In *Lugo*, we stated that the special-aspects test was

> consistent with § 343A of the Restatement, which indicates that a possessor of land is only liable to invitees for harm caused by an obvious condition if the possessor should "anticipate the harm." . . . Simply put, there must be something out of the ordinary, in other words, special, about a particular open and obvious danger in order for a premises possessor to be expected to anticipate harm from that condition. [*Lugo*, 464 Mich at 525.]

See also *Hoffner*, 492 Mich at 479 (noting that our standard reflects caselaw that relied on § 343 and § 343A of the Restatement and remains consistent with those provisions).[11]

We agree with the analysis set forth in the Restatement and in the cases from other jurisdictions cited above.[12] Given that our state is prone to winter, it is reasonable to anticipate that many businesses will remain open even during bleak winter conditions. A landlord cannot expect that every one of its tenant's employees will be permitted to stay home on snowy days. Therefore, it is reasonable to anticipate that a person will proceed

---

[11] In light of this history, we cannot agree with Justice ZAHRA's suggestion that by looking to the Restatement, as we have for nearly 90 years (beginning with the First Restatement), our decision departs from "decades" of authority. Nor can we agree with Justice CLEMENT's apparent view that the Second Restatement, which she sharply criticizes, is distinct enough from our present standard to make it unusable here. It is clear that neither dissent truly credits our statements in *Lugo* and *Hoffner* that the special-aspects test is consistent with the Second Restatement.

[12] By following this illustration from the Restatement, we do not intend to signify that all such illustrations have been or should be adopted or that the Restatement is somehow binding authority. The Restatement remains persuasive authority that we can look to, as we do here, in undertaking our duty to develop the common law. See *Price v High Pointe Oil Co, Inc*, 493 Mich 238, 258; 828 NW2d 660 (2013) ("This Court is the principal steward of Michigan's common law . . . .") (citation and quotation marks omitted).

to encounter a known or obvious danger for purposes of his or her work.  Accordingly, an open and obvious hazard can become effectively unavoidable if the employee confronted it to enter his or her workplace for work purposes.[13]

Contrary to defendant's claims, this is not a subjective inquiry that focuses on the peculiar facts leading the employee to confront the condition.  Instead, the overall analysis centers on whether a reasonable premises possessor in the defendant's circumstances could reasonably foresee that the employee would confront the hazard despite its obviousness.  See *Hoffner*, 492 Mich at 461 n 15 ("The objective standard recognizes that a premises

---

[13] *Hoffner* contains language suggesting we have taken the opposite approach on the issue presented in this case: "[I]t cannot be said that compulsion to confront a hazard by the *requirement of employment* is any less 'avoidable' than the need to confront a hazard in order to enjoy the privileges provided by a contractual relationship, such as membership in a fitness club." *Hoffner*, 492 Mich at 471-472.  But not only was this statement nonbinding dictum—*Hoffner* had nothing to do with the plaintiff's employment—it was also wrong. For support, *Hoffner* relied on *Perkoviq*, 466 Mich 11.  *Perkoviq* is not apt.

In *Perkoviq*, the plaintiff was on a roof to paint a newly constructed house as part of his employment when he slipped on ice and fell.  *Id*. at 12.  Finding no duty in these circumstances, we held that "defendant had no reason to foresee that the only persons who would be on the premises, various contractors and their employees, would not take appropriate precautions in dealing with the open and obvious conditions of the construction site."  *Id*. at 18; see also *id*. at 19 (noting that the defendant "could not expect that employees of subcontractors working on the house would fail to take necessary precautions to guard against the obvious danger").  Although we did not expressly rely on the plaintiff's work experience, our analysis did explicitly invoke the foreseeability of harm in this situation and, in this regard, we emphasized the fact that the plaintiff worked for a contractor with other employees on site and presumably with the means and knowledge "to take necessary precautions" to ward against the risk.  *Id*.  Thus, *Perkoviq* did not discuss whether compulsion to confront a hazard for purposes of employment can render that hazard effectively unavoidable.  Instead, the Court determined that the hazard was avoidable because it was foreseeable, from the defendant's perspective, that the plaintiff had the ability to select alternatives that would have avoided the hazard.

14

owner is not required to *anticipate* every harm that may arise as a result of the idiosyncratic characteristics of each person who may venture onto his land.") (emphasis added); *Lugo*, 464 Mich at 525 (discussing the possessor's reasonable expectations); *Perkoviq v Delcor Homes–Lake Shore Pointe, Ltd*, 466 Mich 11, 19-20; 643 NW2d 212 (2002) (same). The premises possessor can expect that the employee will act reasonably. Cf. *Perkoviq*, 466 Mich at 19-20; see also *Mann v Shusteric Enterprises, Inc*, 470 Mich 320, 329 n 10; 683 NW2d 573 (2004) (noting that, in determining whether a condition is open and obvious, the perspective of a "reasonably prudent person" is used rather than the particular view of the plaintiff). It follows that the employee's circumstances are relevant only to the extent they conform to an objectively reasonable standard. Put differently, the employee's decision to confront the hazard to enter his or her workplace is considered under an objective standard.[14]

This standard's application will depend on the facts of the case, but the key is whether alternatives were available and would have been used by a reasonable person in the employee's circumstances. Cf. *Perkoviq*, 466 Mich at 19-20. If an employee could have avoided the condition through the use of due care under the circumstances, then the condition was not effectively unavoidable. See *id*. For example, an employee might be able to avoid a hazard by taking a different path to work. Another consideration is whether the employee would need to breach the employer's policies in order to avoid the condition

---

[14] Justice ZAHRA's concerns about the supposed subjectivity of this approach are misplaced. Our standard does not invite considerations of a particular individual's "work interests," "personal lifestyle priorities," or "sense of risk aversion." *Post* at 5-6. Instead, we simply recognize that a premises possessor might expect a reasonable person to confront a hazard to enter his or her workplace.

15

and what the consequences of that breach might be.[15]  What a court cannot conclude, however, is that a hazard was avoidable simply because the employee could have elected to skip work or breach other requirements of his or her employment.[16]

## B.  APPLICATION

Applying the above analysis to this case, we find a genuine issue of material fact regarding whether the hazard was effectively unavoidable.  As the Court of Appeals recognized, Livings presented evidence that snow and ice covered the entire parking lot, encompassing both the employee and customer sections.  It is undisputed that Livings confronted the snow and ice in order to enter the restaurant in order to begin her shift.

---

[15] In this regard, we do not believe that a plaintiff must show that he or she would have been terminated for failing to attend work.  Cf. *LaFever*, 185 Ill 2d at 392 (rejecting the argument that the plaintiff had to show he would have been terminated).  Even aside from simply keeping a job, an employee has other natural inducements to show up for work, such as remaining in good standing and earning a day's pay.

[16] The Court of Appeals has reached divergent conclusions on this topic.  In doing so, it has developed a standard at odds with the one described above.  In *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 412; 864 NW2d 591 (2014), the Court held that "[t]he mere fact that a plaintiff's employment might involve facing an open and obvious hazard does not make the open and obvious hazard effectively unavoidable."  But in *Lymon v Freedland*, 314 Mich App 746, 761-762; 887 NW2d 456 (2016), the Court, without citing *Bullard*, concluded that the plaintiff's employment as a home healthcare aide was relevant to the unavoidability analysis because the plaintiff needed to confront the hazard to reach her elderly and sick patient.  The upshot of this caselaw can be seen in the partial dissent in the present case: courts must decide whether a particular job is "important" enough to justify, to the judges' minds, risking a hazardous condition.  Such a standard, requiring courts to sit in judgment of the social value of various jobs, is not a task suited to the judiciary.  To the extent this caselaw is inconsistent with our opinion today, it is overruled.  As noted above, however, courts can consider the consequences of failing to attend work or breaching other employment requirements, and those consequences may differ depending on the urgency of the work.

16

From this, the fact-finder could reasonably conclude that Livings confronted the condition to enter her place of employment for work purposes.

The question then becomes whether Livings could or should have used a reasonable alternative. In this regard, the parties have discussed whether Livings would have violated her employer's policies by parking in the customer lot. But, as noted, Livings has presented evidence that the customer lot also was covered in snow and ice. Evidence therefore exists that she would not have avoided the condition by parking there. Defendant also contends that Livings could have left and returned when the condition had resolved or simply waited in her car until that time. These suggestions are tantamount to skipping work and, under the analysis above, are therefore not reasonable alternatives.[17]

In short, then, Livings has presented sufficient evidence that she confronted the snow and ice to enter her workplace for purposes of her employment. Defendant has not shown as a matter of law that any reasonable alternative would have allowed Livings to avoid the hazard. Consequently, a genuine question of material fact exists as to whether the condition here was effectively unavoidable.

## IV. CONCLUSION

Our decision today deals with a narrow but important part of our open-and-obvious doctrine: when is a hazard effectively unavoidable? We hold that a hazard can be deemed effectively unavoidable if the plaintiff confronted it to enter his or her place of employment

---

[17] Defendant also notes that Livings could have called for help in navigating the ice. Livings still would have needed to confront the ice, but presumably would have received assistance from someone else. Aside from noting evidence that Livings had her cell phone, defendant has not presented any evidence suggesting that requesting help was a viable alternative that could have sufficiently reduced the risk posed by the hazard.

17

for purposes of work. In these circumstances, it is possible for a defendant to foresee that the employee will confront the hazard. The bare fact that the employee could have failed to report to work as required by his or her employer is not a reasonable alternative. Instead, courts addressing this issue should consider whether a reasonable person in the plaintiff's circumstances would have used any available alternatives to avoid the hazard. In the present case, Livings's fall on the snow and ice occurred as she attempted to enter her workplace. She has raised an issue of material fact as to whether the conditions of the parking lot were effectively unavoidable. We accordingly affirm the judgment of the Court of Appeals and remand this case to the trial court for further proceedings.

> David F. Viviano
> Bridget M. McCormack
> Richard H. Bernstein
> Megan K. Cavanagh

STATE OF MICHIGAN

SUPREME COURT

ESTATE OF DONNA LIVINGS,

        Plaintiff-Appellee,

v

No. 159692

SAGE'S INVESTMENT GROUP, LLC,

        Defendant-Appellant,

and

T & J LANDSCAPING & SNOW
REMOVAL, INC., and GRAND
DIMITRE'S
OF EASTPOINTE FAMILY DINING,

        Defendants.

---

MCCORMACK, C.J. (*concurring*).

I concur with the majority because I agree that under our precedent, an open and obvious condition may be effectively unavoidable when the land possessor should have reasonably expected the plaintiff-employee to confront the condition to get to work. There remains a genuine issue of material fact about the effective unavoidability of the ice-covered parking lot that injured Donna Livings as she tried to enter her workplace, and the majority's analysis properly applies the special aspects doctrine. *Hoffner v Lanctoe*, 492 Mich 450; 821 NW2d 88 (2012), does not bar that result; going to work is different from going to work out.

I write separately, however, to express my reservations about the continued reliance on the judicially created special aspects doctrine. It has been two decades since this Court first articulated this doctrine in *Lugo v Ameritech Corp, Inc*, 464 Mich 512; 629 NW2d 384 (2001), and I am not convinced that its drift from the more sensible and straightforward approach outlined in the Second Restatement of Torts has worked to clarify the law.

This is not a novel view. From the moment *Lugo* was decided, commentators and justices have questioned the soundness of its logic and the wisdom of its special aspects inquiry. See, e.g., Marks, *The Limit to Premises Liability for Harms Caused by "Known or Obvious" Dangers: Will It Trip and Fall Over the Duty-Breach Framework Emerging in the Restatement (Third) of Torts?*, 38 Tex Tech L Rev 1, 42-47 (2005) (disagreeing with the *Lugo* Court's assertion that under § 343A of the Second Restatement, liability for injury caused by an open and obvious danger is appropriate only when the condition possesses a special aspect); Potocsky, Note, *The Blind Plaintiff Post-*Lugo v. Ameritech*: Falling Away From the Restatement in "Open and Obvious" Jurisprudence in Michigan*, 62 Wayne L Rev 557 (2017) (critiquing the *Lugo* Court for lessening the duty of care on landowners and abandoning the Restatement approach that had long been central to Michigan's open-and-obvious jurisprudence); Braden, *Adventures in OpenandObvious Land*, 86 Mich B J 28, 29-31 (Mar 2007) (criticizing *Lugo* and the special aspects inquiry as part of a broader critique of Michigan's open-and-obvious doctrine); *Lugo*, 464 Mich at 527-532 (CAVANAGH, J, concurring) (agreeing with the majority's conclusion that liability cannot be imposed against the defendant but questioning the majority's formulation of its special aspects inquiry, which conflicts with Michigan caselaw and the Restatement approach). In

2

an appropriate case, with the benefit of two decades of hindsight, this Court should reconsider the continued viability of the special aspects doctrine.

## I. THE EVOLUTION OF MICHIGAN'S OPEN-AND-OBVIOUS DOCTRINE

The First Restatement of Torts, published in 1934, created a bright-line rule: If the entrant on the land recognized the risk posed by a dangerous condition of the land, the land possessor was absolved from any liability for resulting harm. See 2 Restatement Torts, § 343. The rule was justified on grounds that have since fallen into disfavor—that the plaintiff's assumption of risk or contributory negligence should bar any recovery. See, e.g., *Shorkey v Great Atlantic & Pacific Tea Co*, 259 Mich 450; 243 NW 257 (1932) (the plaintiff was contributorily negligent and barred from recovery when she was injured after the heel of her shoe got stuck in a hole in a hot air register in the defendant's store; a reasonably prudent person would have known the size of her heels and avoided the danger); *Curtis v Traders Nat'l Bank*, 314 Ky 765; 237 SW2d 76 (1951) (a 60-year-old customer who slipped and fell on defendant bank's wet marble floor assumed the risk "with full knowledge of its condition" and was barred from recovery). The results of this no-duty rule could be harsh, and several prominent critics called for it to be modified or abrogated altogether. See *Limit to Premises Liability*, 38 Tex Tech L Rev at 28-29.

The American Law Institute chose modification. The Second Restatement of Torts, published in 1965, tweaked the approach of the First Restatement and codified a general section on dangerous conditions and a subsection dedicated specifically to "known or obvious dangers."

> § 343. Dangerous Conditions Known to or Discoverable by Possessor.

3

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

\* \* \*

§ 343A.  Known or Obvious Dangers

(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

(2) In determining whether the possessor should anticipate harm from a known or obvious danger, the fact that the invitee is entitled to make use of public land, or of the facilities of a public utility, is a factor of importance indicating that the harm should be anticipated.  [2 Restatement Torts, 2d, §§ 343 and 343A, pp 215-216, 218.]

Section 343 creates a general reasonable-care standard that land possessors owe to their invitees.  Section 343A, like its predecessor in the First Restatement, creates a presumption of non-liability for known or obvious conditions.  But § 343A also explains that this presumption can be overcome if the land possessor should have anticipated the harm *even though* the condition was known or obvious.[1]

---

[1] Comment *f* of § 343A provides examples of circumstances in which a land possessor should have anticipated that a dangerous condition would cause harm, despite its known or obvious nature.  For instance, when the land possessor had reason to expect the invitee's attention would be distracted or where a reasonable person would conclude that the

4

Michigan courts have long embraced the Second Restatement approach. Indeed, even before the Second Restatement was published, Michigan courts were experimenting with its principles. In *Boylen v Berkey & Gay Furniture Co*, 260 Mich 211; 244 NW 451 (1932), the plaintiff worked for a railroad company as a switchman and suffered a severe injury after the defendant left a loaded furniture truck alongside the switch track on its premises. *Id*. at 212-213. The Court recognized that Michigan precedent excused liability when " 'the defect complained of was open, obvious, and apparent, and required only the most ordinary observation and notice in order to give him full knowledge of its condition.' " *Id*. at 216, quoting *Leary v Houghton Co Traction Co*, 171 Mich 365, 369; 137 NW 225 (1912). But using language that would later be echoed in the Second Restatement, the Court considered whether, notwithstanding the open and obvious condition, the defendant "was reasonably bound to anticipate" the circumstances of the plaintiff's injury. *Boylen*, 260 Mich at 219.

This Court explicitly adopted the Second Restatement approach to open and obvious dangers in *Riddle v McLouth Steel Prod Corp*, 440 Mich 85; 485 NW2d 676 (1992). *Riddle* arrived in the wake of a revolution. More than a decade prior, the Court issued its landmark decision in *Placek v Sterling Hts*, 405 Mich 638; 275 NW2d 511 (1979), which did away with the doctrine of contributory negligence—a doctrine that "had caused substantial injustice since it was first invoked in England in 1809" by barring recovery when the plaintiff's own negligence helped cause the injury. *Id*. at 652. In its place, the Court

advantages of confronting the condition outweigh the apparent risk, liability may still attach. 2 Restatement Torts, 2d, § 343A, comment *f*, p 220.

adopted a doctrine of comparative negligence, by which damages would be reduced in proportion to the plaintiff's own negligence. *Id*. at 661-662. See also MCL 600.2958 (codifying a modified comparative fault regime to govern actions based on tort or other legal theories seeking damages for personal injury, property damage, or wrongful death). Some wondered, given *Placek*, whether the open-and-obvious doctrine's days were numbered. A doctrine that creates a general no-duty rule barring all liability is seemingly out of step with a comparative negligence scheme.

In *Riddle*, this Court held otherwise. The open-and-obvious doctrine, we said, focused on a threshold determination of the defendant's duty. *Riddle*, 440 Mich at 95-96. That duty element is "fundamentally exclusive" from the comparative negligence standard, an affirmative defense invoked only *after* duty has been established. *Id*. at 95. We embraced § 343A of the Second Restatement, finding that Michigan precedent quoting that rule "correctly define[d] the law regarding a premises owner's duty of care to invitees." *Id*. at 95.

## II. THE SPECIAL ASPECTS DOCTRINE

This takes us to *Lugo*. In *Lugo*, the plaintiff injured herself after stepping in a pothole in a parking lot. *Lugo*, 464 Mich at 514. The plaintiff provided no evidence that the pothole presented an unreasonable risk of harm or that the defendant should have expected that the pothole would cause injuries to its customers traversing the parking lot. *Id*. at 543-544 (CAVANAGH, J., concurring). But rather than simply applying the liability shield in § 343A, this Court introduced the special aspects doctrine. Two decades later, no other jurisdiction has embraced or adopted this doctrine.

The special aspects doctrine established that an open and obvious condition will only result in liability against the land possessor when "there are truly 'special aspects' of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm . . . ." *Id*. at 517 (opinion of the Court). At first blush, this formulation may not appear to deviate in any important way from the Second Restatement approach. Indeed, an open and obvious danger with a "special aspect" that creates "an unreasonable risk of harm" may well be one of the types of dangers that § 343A envisioned when discussing circumstances in which the land possessor "should anticipate the harm despite such knowledge or obviousness." 2 Restatement Torts, 2d, § 343A, p 218.

But in an effort to provide guidance to lower courts applying this new test, *Lugo* offered two examples of the newly created special aspects doctrine at work. Rather than using facts from real cases, the Court presented what Justice WEAVER, in concurrence, presciently called "unlikely hypothetical examples." *Lugo*, 464 Mich at 545 (WEAVER, J., concurring). The first showcased an "effectively unavoidable" danger in the form of standing water next to a commercial building's only exit, effectively trapping consumers inside the building. *Id*. at 518 (opinion of the Court). The second highlighted an "unreasonably dangerous" condition in the form of an "unguarded thirty foot deep pit in the middle of a parking lot." *Id*.

The *Lugo* Court did not explain why it developed this new test rather than apply precedent. Before *Lugo*, Michigan courts were routinely applying § 343A of the Second Restatement to resolve premises liability disputes about open and obvious conditions. See *Riddle*, 440 Mich at 94-95; *Bertrand v Alan Ford, Inc*, 449 Mich 606, 624 (1995) (relying

7

on § 343A to conclude that notwithstanding the open and obvious nature of a step that caused an injury, a genuine issue remained as to whether the construction of the step and its placement created an unreasonable risk of harm so that "the defendant should have reasonably anticipated" the circumstances that led to the injury); *Singerman v Muni Serv Bureau, Inc*, 455 Mich 135, 143; 565 NW2d 383 (contrasting the facts of the case with an illustration from § 343A that the *Bertrand* Court highlighted in its analysis). Court of Appeals opinions from the post-*Riddle*, pre-*Lugo* era also applied the Restatement test. See *Hottmann v Hottmann*, 226 Mich App 171, 175; 572 NW2d 259 (1997) (concluding that despite the open and obvious danger presented by falling off a steep roof, summary disposition for the defendant was inappropriate because the land possessor "may still have a duty to protect invitees against foreseeably dangerous conditions"); *Butler v Wal-Mart Stores, Inc*, unpublished per curiam opinion of the Court of Appeals, issued March 27, 2001 (Docket No. 219203), pp 3-4 (acknowledging that open and obvious dangers can still result in liability if the land possessor should have anticipated the harm, but finding that no evidence suggested that the defendant should have anticipated that patrons would trip and fall on the trailer-mounted barbecue pit that caused the plaintiff's injury); *Hanna v Wal-Mart Stores, Inc*, unpublished per curiam opinion of the Court of Appeals, issued April 13, 2001 (Docket No. 219477), p 2 (applying § 343A to conclude that an issue of fact remained as to whether the defendant department store's placement of a floor mat, which developed a two-inch fold that the plaintiff tripped over, constituted a "foreseeably dangerous condition" despite its open and obvious nature).

The special aspects doctrine strikes me as a solution in search of a problem. The Court suggested that it was simply applying the Restatement approach, but the scheme it

created has little basis in the language of the Restatement or this Court's precedent. Even the phrase "special aspects" is plucked out of context from *Bertrand*. See *Lugo*, 464 Mich at 541-542 (CAVANAGH, J., concurring). The term does not appear in § 343 or § 343A. This departure from precedent was all the more perplexing because it came in a case in which a straightforward application of existing precedent would have arrived at the same result. The doctrine was an abrupt, unnecessary shift in Michigan's approach to open and obvious dangers.

Not surprisingly, since *Lugo*, 30-foot pits and standing water traps became the barometer for lower courts applying the special aspects doctrine. See, e.g., *Bredow v Land & Co*, 307 Mich App 579, 594; 862 NW2d 232 (2014) (WHITBECK, J., concurring) ("The Supreme Court's hypothetical 30-foot-deep pit is not even remotely similar to the situation we have here"); *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 410-411; 864 NW2d 591 (2014) (referring to *Lugo*'s "unguarded thirty foot deep pit" as a point of reference for what constitutes unreasonably dangerous conditions and concluding that ice on a plank of wood at a construction site was not unreasonably dangerous); *McKiddie v Super Bowl of Canton, Inc*, unpublished per curiam opinion of the Court of Appeals, issued October 18, 2007 (Docket No. 272597), p 2 ("[A] slippery floor does not present the same level of danger and risk as a commercial building surrounded by water or an unguarded 30-foot deep pit in the middle of a parking lot. The special aspects doctrine does not apply to the case at bar.").

Though some jurists have speculated that *Lugo*'s "effectively unavoidable" and "unreasonably dangerous" categories were merely "*illustrative examples* of situations featuring 'special aspects,' rather than an exclusive list," *Richardson v Rockwood Ctr, LLC*,

9

275 Mich App 244, 254; 737 NW2d 801 (2007) (DAVIS, J., dissenting) (a fair question, in my view), that has not been the predominant understanding. Due largely to the *Lugo* special aspects exemplars, what was already a narrow exception to the general rule of no liability for open and obvious conditions has been narrowed even further. Indeed, before today's opinion, our Court had never identified a real-world condition that was effectively unavoidable or unreasonably dangerous such that liability attached. One of the rare Court of Appeals opinions finding such a condition shows just how high a bar *Lugo* set. In *Lymon v Freedland*, 314 Mich App 746; 887 NW2d 456 (2016), the Court of Appeals found that a home healthcare aide encountered an effectively unavoidable steep and icy driveway that she needed to cross to reach her patient, an elderly woman who suffered from dementia and Parkinson's disease and could not be left alone. Our Court denied leave in that case, though one justice dissented from that order, expressing skepticism that the driveway contained special aspects to render it effectively unavoidable. *Lymon v Freedland*, 501 Mich 933, 933-936 (MARKMAN, J., dissenting).

The practical result of the special aspects doctrine is that fewer cases find their way to Michigan juries. When the point of reference is a 30-foot-deep pothole or a group of people trapped in a building, it is unsurprising that courts so often conclude that land possessors owe no duty when a dangerous condition is obvious. Tort liability, like much of law, regulates risk; a rule that effectively prevents liability isn't managing risk efficiently. As a result, the dissonance already present between Michigan's open-and-obvious doctrine and comparative negligence principles has only magnified in the wake of *Lugo.*

10

The special aspects doctrine has set Michigan apart, and it isn't clear why Michigan needs a special rule. Jurisdictions vary in their approaches to premises liability, but the special aspects doctrine has left our state stranded on our own common law island for two decades. No other state had adopted a special aspects inquiry before *Lugo*, and no other state has done so since. Some state common law divergence is justified and one of the benefits of federalism. See, e.g., Cohen, *The Common Law in the American Legal System: The Challenge of Conceptual Research*, 81 L Libr J 13, 23 (1989) ("The American deviations stemmed also from differences in the constitutional structures of the colonies, in their political experiences and social attitudes, in local traditions and social attitudes, and in local geography, resources, climate, and economic conditions."). But where, as here, that deviation is not rooted in a state-specific quirk, the rationale supporting the deviation shows its cracks. There is nothing inherently special about the relationship between Michigan premises owners and Michigan invitees. Given the goals of clarity and predictability, Michigan's unique approach to the open-and-obvious doctrine puts the public at a disadvantage. See *Woodard v ERP Operating Ltd Partnership*, 351 F Supp 2d 708, 713 (ED Mich, 2005) ("The 'open and obvious' doctrine is one of the most litigated areas of Michigan premises liability law. Despite the fact that Michigan courts have decided hundreds of cases involving the doctrine, inconsistent applications of the doctrine have resulted in a confusing jurisprudence.").

## III. CONCLUSION

I hope this Court will one day consider the legacy of *Lugo* and the special aspects doctrine. For now, the majority correctly determines that an open and obvious condition

11

can be considered effectively unavoidable when an employee must confront it to go to work. Rather than continually finessing and refining this outlier doctrine, we should ask whether the Second Restatement's approach (as adopted by many of our sister jurisdictions) would provide more stability and predictability for Michigan. Or perhaps it is time for this Court to consider the Third Restatement's approach, which aligns more neatly with comparative negligence principles by imposing a blanket reasonable duty of care standard. See 2 Restatement Torts, 3d, Liability for Physical and Emotional Harm, § 51, p 242.

For this case, however, the majority correctly applies our existing premises liability law—there is a genuine issue of material fact about whether the ice-covered parking lot was effectively unavoidable. I therefore concur in full with the majority opinion.

> Bridget M. McCormack
> Richard H. Bernstein
> Megan K. Cavanagh

12

STATE OF MICHIGAN

SUPREME COURT

ESTATE OF DONNA LIVINGS,

        Plaintiff-Appellee,

v                                      No. 159692

SAGE'S INVESTMENT GROUP, LLC,

        Defendant-Appellant,

and

T & J LANDSCAPING & SNOW
REMOVAL, INC., and GRAND
DIMITRE'S
OF EASTPOINTE FAMILY DINING,

        Defendants.

_____

ZAHRA, J. (*dissenting*).

      I respectfully dissent. In endorsing the approach set forth in 2 Restatement Torts, 2d, § 343, comment *f*, Illustration 5, the majority imprudently shifts the focus of the open and obvious danger doctrine's special-aspects exception from an objective examination of the condition on the premises at issue to an examination of the individual characteristics or inclinations of the particular person approaching that condition, doing away with the uniformity and predictability that this Court has sought to bring to this area of the law over the last two decades. Moreover, in applying its standard, the majority creates the very

subclass of invitees that this Court expressly rejected in *Hoffner v Lanctoe*.[1]  Rather than adopting the Restatement illustration, I would apply this Court's well-established open and obvious danger jurisprudence to conclude that a person's employment is simply not a relevant consideration in determining whether a condition was itself effectively unavoidable for purposes of the special-aspects doctrine.  Because the condition at issue in this case was undisputedly open and obvious and because Donna Livings's desire to reach her place of employment did not render the condition effectively unavoidable, I conclude that the open and obvious danger doctrine insulates defendant from liability.  Accordingly, I would reverse the Court of Appeals' judgment and remand this case to the trial court for entry of summary disposition in defendant's favor.

## I.  ANALYSIS

A premises owner generally owes a duty to an invitee to exercise reasonable care to protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land.[2]  This duty does not extend to hazards that are "open and obvious."[3]  If, however, despite its openness and obviousness, the risk involves some "special aspects" that exacerbate a danger, the premises owner is required to undertake reasonable precautions to

---

[1] *Hoffner v Lanctoe*, 492 Mich 450, 470-473; 821 NW2d 88 (2012).

[2] *Bertrand v Alan Ford, Inc*, 449 Mich 606, 609; 537 NW2d 185 (1995).  As the majority notes, the parties do not dispute Livings's status as a business invitee.

[3] *Id*. at 610-612.

2

protect invitees.[4]  This Court has specifically recognized that a special aspect of an open and obvious condition that renders it effectively unavoidable may give rise to liability.[5] "[T]he standard for 'effective unavoidability' is that a person, for all practical purposes, must be *required* or *compelled* to confront a dangerous hazard.  As a parallel conclusion, situations in which a person has a *choice* whether to confront a hazard cannot truly be unavoidable, or even effectively so."[6]  This case pertains to this "effectively unavoidable" piece of the special-aspects doctrine.

The majority's holding that a plaintiff's employment situation is a relevant consideration in the special-aspects inquiry is inconsistent with decades of this Court's common-law premises-liability jurisprudence.  This Court has repeatedly maintained that application of the open and obvious danger doctrine, and its special-aspects exception, turns on the objective nature of the condition on the premises itself.  In the seminal case of *Lugo v Ameritech Corp*, this Court stated that "it is important for courts in deciding summary disposition motions by premises possessors in 'open and obvious' cases to focus on the objective nature of the condition of the premises at issue, not on the subjective degree of care used by the plaintiff."[7]  A question almost identical to the question presented

---

[4] *Id*. at 614.

[5] *Lugo v Ameritech Corp*, 464 Mich 512, 518; 629 NW2d 384 (2001).

[6] *Hoffner*, 492 Mich at 469.

[7] *Lugo*, 464 Mich at 523-524.  See also *id*. at 514 ("The pothole was open and obvious, and plaintiff has not provided evidence of special aspects *of the condition* to justify imposing liability on defendant despite the open and obvious nature of the danger.") (emphasis added); *id*. at 517 ("[W]ith regard to open and obvious dangers, the critical question is

3

in this case was considered in *Hoffner*. We reaffirmed that the question of whether special aspects of the condition justify imposing liability on a defendant despite the open and obvious nature of the danger turns on the objective nature of the condition on the premises. This Court reiterated that "an invitee's subjective need or desire" to enter a premises does not "affect[] an invitee's choice whether to confront an obvious hazard. To conclude otherwise would impermissibly shift the focus from an objective examination of the *premises* to an examination of the subjective beliefs of the *invitee*."[8] Thus, in applying the special-aspects doctrine, this Court has consistently and narrowly focused on the objective characteristics of the condition on the premises itself, not on the characteristics and considerations unique to the particular plaintiff encountering that condition.[9]

---

whether there is evidence that creates a genuine issue of material fact regarding whether there are truly 'special aspects' *of the open and obvious condition . . . .*") (emphasis added); *id*. at 523 ("Accordingly, in light of plaintiff's failure to show *special aspects of the pothole at issue*, it did not pose an unreasonable risk to her.") (emphasis added); *id*. at 524 ("In the present case, there was no evidence of special aspects that made *the open and obvious pothole* unreasonably dangerous.") (emphasis added).

[8] *Hoffner*, 492 Mich at 471. See also *id*. at 461, quoting *Lugo*, 464 Mich at 523-524 ("This is an *objective standard*, calling for an examination of 'the objective nature of the condition of the premises at issue.' "); *id*. at 461 n 15 ("The objective standard recognizes that a premises owner is not required to anticipate every harm that may arise as a result of the idiosyncratic characteristics of each person who may venture onto his land. This standard thus provides predictability in the law."); *id*. at 478 n 51 ("[W]e reiterate that issues arising in application of the open and obvious doctrine are to be decided using an *objective* standard—as our rejection of plaintiff's position and application of the standard in this case illustrates.").

[9] See also *Perkoviq v Delcor Homes–Lake Shore Pointe Ltd*, 466 Mich 11, 19-20; 643 NW2d 212 (2002) ("In short, plaintiff has presented no evidence that *the condition of the roof was unreasonably dangerou*s for purposes of premises liability. The mere presence of ice, snow, or frost on a sloped rooftop generally does not create an unreasonably dangerous condition.") (emphasis added); *Mann v Shusteric Enterprises*, 470 Mich 320,

4

This is for good reason. The nature of a readily observable condition does not change on the basis of a plaintiff's personal obligations or responsibilities, including a need to reach his or her place of employment. This Court's approach prior to this case, which concentrated on the condition on the premises itself rather than on any other factor unique to a particular invitee, allows for uniform application of and predictability in the law. This predictability is particularly important in the premises-liability context, as the applicable law shapes countless ordinary and pedestrian interactions that occur every day throughout the state of Michigan. Every property owner in this state is obligated to maintain its property in a way that is defined by common-law standards, as developed by our caselaw. And under our caselaw, at least until today, a property owner need only have assessed the potential harms of an open and obvious risk from a single objective standard, focused on the condition of the premises itself rather than from a potentially limitless number of standards defined by the individual circumstances and inclinations of every Michigan citizen. Application of a single standard defining the nature of interactions between property owners and the public fosters more predictability in the law than a standard requiring resolution by a jury of the various interests related to a particular person, including his or her work interests, the personal lifestyle priorities that he or she might

---

329; 683 NW2d 573 (2004), quoting *Lugo*, 464 Mich at 518 n 2 ("[I]n a premises liability action, the fact-finder must consider the 'condition of the premises,' not the condition of the plaintiff."); *Bullard v Oakwood Annapolis Hosp*, 308 Mich App 403, 412; 864 NW2d 591 (2014) (focusing on the nature of the condition on the premises rather than the circumstances of the plaintiff and concluding that "[t]he mere fact that a plaintiff's employment might involve facing an open and obvious hazard does not make the open and obvious hazard effectively unavoidable").

5

have, the sense of risk aversion that he or she might bring to his or her daily interactions, and countless other personal instincts and inclinations.

By taking into consideration Livings's employment status in the "effectively unavoidable" inquiry, the majority adopts this latter type of standard, wrenching away the predictability from an area of the law in which predictability is necessary in order for landowners to arrange their affairs.

The majority disagrees that its inquiry subjectively "focuses on the peculiar facts leading the employee to confront the condition,"[10] maintaining that the Restatement test and our caselaw alike center primarily on the perspective of the premises possessor. But the Restatement approach, even if focused on the perspective of the landowner rather than the invitee, still requires the possessor to consider an individual plaintiff's characteristics when anticipating whether a hazard poses an unreasonable danger rather than looking to the hazard itself to anticipate whether it poses an unreasonable danger. In other words, instead of looking only to the condition at issue to determine whether it possesses a special aspect, under the majority's test, the possessor looks to the plaintiff at issue to determine whether he or she possesses any special circumstances. This is markedly inconsistent with our longstanding jurisprudence.

---

[10] The majority claims that its approach does not require an examination of the specific facts leading an employee to confront a condition, yet seems to call for just that by explaining that the details of a person's employment are relevant in determining whether the condition was avoidable. The majority indicates that, in order to determine whether an employee could have avoided a condition, considerations for a court to consider might include asking whether the employee would need to breach the employer's policies in order to avoid the condition. This will necessarily require a court to engage in a very fact- and plaintiff-specific inquiry.

6

Moreover, and relatedly, the majority's opinion creates the very subclass of business invitees that this Court considered and rejected in *Hoffner*. The *Hoffner* Court, in repudiating the notion that the plaintiff's need to enter a business rendered a condition effectively unavoidable, opined:

> We reject these conclusions permitting recovery for a typical hazard confronted under ordinary circumstances as inconsistent with the law of this state regarding the duty owed to invitees and premises owners' resultant liability for injuries sustained by invitees. The law of premises liability in Michigan provides that the duty owed to an invitee applies to *any business invitee*, regardless of whether a preexisting contractual or other relationship exists, and thus the open and obvious rules similarly apply with equal force to those invitees. . . .
>
> \* \* \*
>
> Perhaps what is most troubling regarding the theory of liability advanced by plaintiff is that it would result, if upheld, in an expansion of liability by imposing a new, *greater* duty than that already owed to invitees. By providing that a simple business interest is sufficient to constitute an *unquestionable necessity* to enter a business, thereby making any intermediate hazard "unavoidable," plaintiff's proposed rule represents an unwarranted expansion of liability. It would, in effect, create a new subclass of invitees consisting of those who have a business or contractual relationship. Such a rule would transform the very limited exception for dangerous, effectively unavoidable conditions into a broad exception covering nearly all conditions existing on premises where business is conducted. Such a rule would completely redefine the duty owed to invitees, allowing the exception to swallow the rule. This proposed rule appears to be an erroneous extrapolation of the basic principle that invitees are owed a greater duty of care than licensees or trespassers. Simply put, Michigan caselaw does not support providing special protection to those invitees who have paid memberships or another existing relationship to the businesses or institutions that they frequent above and beyond that owed to any other type of invitee. Neither possessing a right to use services, nor an invitee's subjective need or desire to use services, heightens a landowner's duties to remove or warn of hazards or affects an invitee's choice whether to confront an obvious hazard. To conclude otherwise would impermissibly shift the

7

focus from an objective examination of the *premises* to an examination of the subjective beliefs of the *invitee*.[11]

By concluding that a certain group of invitees, here employees, are entitled to special treatment based on their employment status, the majority creates a hybrid status on the land that heightens the duty owed to one type of business invitee, contrary to *Hoffner*. While *Hoffner* did not itself pertain to employment, its logic applies with equal force to the employment context. Indeed, the *Hoffner* Court recognized this, opining that "it cannot be said that compulsion to confront a hazard by the *requirement of employment* is any less 'avoidable' than the need to confront a hazard in order to enjoy the privileges provided by a contractual relationship, such as membership in a fitness club."[12] Even if this language is dictum, as the majority opinion suggests, *Hoffner*'s emphasis that all business invitees should be treated the same should be dispositive in this context. Crucially, nothing will prevent future courts from extending the majority's reasoning to other classes of business invitees. It is not difficult to envision a resulting system in which even the most trivial of subjective business interests combined with a hazardous condition would impose liability—the very scenario that the *Hoffner* Court cautioned against. For all practical purposes, this would make landowners the insurers for injuries that occur on their land, a result that is incompatible with this Court's prior premises-liability jurisprudence.[13]

---

[11] *Hoffner*, 492 Mich at 469-471.

[12] *Id*. at 471-472. While the majority concludes that this statement from *Hoffner* was "wrong," I find it to be entirely consistent with the condition-focused approach that this Court has taken post-*Lugo*.

[13] See, e.g., *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 500; 418 NW2d 381 (1988), quoting Prosser & Keeton, Torts (5th ed), § 61, p 425 (" '[T]he occupier is not an

8

In endorsing and applying § 343A, Illustration 5 to comment *f* of the Restatement, the majority notes that other jurisdictions apply the Restatement in the employment context and emphasizes that this Court's jurisprudence has long been informed by the Restatement. But the majority downplays the tension that is undeniably present between our caselaw and the Restatement. While this Court has at times looked to the Restatement when developing our open and obvious danger doctrine, we have never embraced the treatise in its entirety. In fact, in *Hoffner*, this Court explicitly declined to do so, stating, "[T]his Court has never adopted wholesale the Restatement approach. While this Court has looked to the Restatement for guidance, it is our caselaw, as developed throughout the years, that provides the rule of law for this State."[14] And the principles of common law that have developed and evolved in our caselaw do not perfectly mirror the Restatement.[15] As

insurer of the safety of invitees, and his duty is only to exercise reasonable care for their protection.' "); *Bertrand*, 448 Mich at 614, citing *Quinlivan v Great Atlantic & Pacific Tea Co, Inc*, 395 Mich 224, 261; 235 NW2d 732 (1975) ("With the axiom being that the duty is to protect invitees from *unreasonable* risks of harm, the underlying principle is that even though invitors have a duty to exercise reasonable care in protecting their invitees, they are not absolute insurers of the safety of their invitees."); *Lugo*, 464 Mich at 517 (quoting this passage from *Bertrand*); *Hoffner*, 492 Mich at 459 ("[L]andowners are not insurers; that is, they are not charged with guaranteeing the safety of every person who comes onto their land.").

[14] *Hoffner*, 492 Mich at 478-489.

[15] Indeed, former Justice CAVANAGH explicitly acknowledged that the Court's open and obvious danger doctrine departed from the Restatement. In his partial dissent in *Mann*, 470 Mich at 342 (CAVANAGH, J., concurring in part and dissenting in part), he opined, "In sum, I am troubled by the majority's overreliance on *Lugo*'s 'special aspects' analysis. By focusing solely on this analysis, the majority repudiates the Restatement approach and, at the very least, unwisely eliminates the 'unless' clause from Michigan jurisprudence." He went on to say that the decision in *Mann* was "simply the latest installment in the majority's systematic dismantling of the Restatement of Torts approach. The majority effectively

9

discussed, the specific Restatement illustration cited by the majority is concerned with an individual plaintiff's ability or desire to avoid a dangerous condition; however, the focus of our jurisprudence is on the characteristics of the supposed dangerous condition itself. In short, Illustration 5 to comment *f* of § 343A of the Restatement is inconsistent with our body of caselaw, and I would decline to adopt it today.[16]

The majority understates the impact its opinion will have on our premises-liability law, failing to anticipate the far-reaching implications of its decision. Application of its plaintiff-oriented test will, over time, erode the predictability and consistency that this area of the law requires, as well as the opinions this Court has maintained in the 20 years since *Lugo* was decided. What is the next subclass of business invitees that will receive special protection under the special-aspects doctrine? What types of personal concerns or considerations can now be considered in determining whether a condition is effectively

---

states that the Restatement approach is dead because *Lugo*, and only *Lugo*, is the law in Michigan." *Id*. at 336. See also *Bragan v Symanzik*, 263 Mich App 324, 331; 687 NW2d 881 (2004) (stating that "in *Lugo v Ameritech Corp*, our Supreme Court replaced the Restatement approach with a special aspects analysis").

[16] The majority cites *Lugo* and notes that this Court has stated that our law remains consistent with the Restatement approach. But even the portion of *Lugo* that the majority quotes shows that this is not truly so. That passage indicates that the focus is purely on the special aspects (or lack thereof) of the condition itself, not the special circumstances of a plaintiff: "Simply put, there must be something out of the ordinary, in other words, special, *about a particular open and obvious danger* in order for a premises possessor to be expected to anticipate harm *from that condition*." *Lugo*, 464 Mich at 525 (emphasis added). And to the extent that the majority applies a foreseeability analysis, our Court has seemingly rejected such an approach. See *Mann*, 470 Mich at 331-332 (" '[S]pecial aspects' are not defined with regard to whether a premises possessor should expect that an invitee will not 'discover the danger' or will not 'protect against it,' but rather by whether an otherwise 'open and obvious' danger is 'effectively unavoidable' or 'impose[s] an unreasonably high risk of severe harm' to an invitee . . . .") (citation omitted).

10

unavoidable? I acknowledge that it is exceedingly difficult for a plaintiff to prove the existence of a special aspect. But I believe this was intended when the special-aspects doctrine was incorporated into our premises-liability jurisprudence. Again, this Court opted for a rule that provided clarity and uniformity in the law, while promoting principles of personal responsibility. Perhaps this Court should clarify the instances where special aspects may be found to exist. But I would not do so by adopting the rule that the majority does today, as it will not clarify, but further muddle, the law.

Because I believe the objective standard that this Court has formulated and applied brings necessary stability to our premises-liability law, and because I would follow the *Hoffner* Court's directive that this Court refrain from creating subclasses of invitees, I would apply *Lugo* and its progeny in this case to conclude that an individual plaintiff's employment status—a characteristic unique to that individual—cannot factor into the determination of whether a condition itself contained a "special aspect."[17] Consequently,

---

[17] I agree with defendant and the Court of Appeals dissent that *Lymon v Freedland*, 314 Mich App 746; 887 NW2d 546 (2016), was wrongly decided. The lower court's determination in that case that the plaintiff's employment was important enough to compel her to traverse an icy driveway was the deciding factor in the Court of Appeals' holding that the ice on which she fell was "effectively unavoidable." This analysis improperly relied not on the nature of the condition itself, but on the type of services performed by the plaintiff.

Of course, this does not leave an employee entirely without recourse. When an employee is injured approaching his or her job, that person can ordinarily apply for and obtain benefits under the Worker's Disability Compensation Act, MCL 418.101 *et seq.*, as Livings herself did. Under these facts, precluding additional recovery when the premises owner and employer happen to be different entities, as is the case here, does not create the unjust result envisioned by plaintiff.

11

a person's need to encounter an open and obvious danger in order to reach his or her place of employment cannot create a special aspect under the law.[18]

Applying these principles to this case, even accepting as true that Livings would have necessarily needed to walk across ice and snow to report for work,[19] I conclude that her desire to reach her place of employment did not render the ice- and snow-covered driveway "effectively unavoidable."[20]  Accordingly, I would hold that, because the

---

[18] See *Hoffner*, 492 Mich at 471-472; *Perkoviq*, 466 Mich at 18-20.  See also *Bullard*, 308 Mich App at 413 (concluding that the plaintiff's "job duties did not mandate that he encounter an obvious hazard"; instead, the plaintiff "could have made different choices that would have prevented him from encountering the ice," including declining to perform the scheduled monthly inspection on the premises at that time).

While the majority cites *Singerman v Muni Serv Bureau, Inc*, 455 Mich 135; 565 NW2d 383 (1997), for the proposition that a plaintiff's employment is a proper consideration in determining whether an open and obvious danger can be avoided, I do not place much weight on that decision given that it was decided before *Lugo*, in which the Court formulated the special-aspects doctrine at issue.  As is discussed at length above, the approach the majority takes today, which allows for consideration of an invitee's employment in the special-aspects inquiry, is inconsistent with the approach developed by this Court post-*Lugo*.

[19] I question whether Livings was actually required to encounter the supposed hazard in order to reach her place of employment.  Rather than parking near the back employee entrance, Livings could have parked closer to the front entrance and entered the building through the front door, just as she did without incident twice after her fall.  While there was testimony indicating that the entirety of the parking lot was covered in ice and snow, Livings was nonetheless able to access the front door by walking around the building on a snow bank, and she seemingly could have taken the same route when first arriving to work. But, given my conclusion that Livings's employment did not "compel" her to enter the building, I need not resolve whether Livings could have entered the building without encountering the ice or snow.

[20] I additionally question whether the ice- and snow-covered parking lot at issue in this case posed the type of "unreasonably dangerous" condition contemplated by the special-aspects

undisputedly open and obvious condition in this case possessed no "special aspects," the open and obvious danger doctrine insulates defendant from liability.

## II. CONCLUSION

With today's decision, the majority departs from nearly two decades of this Court's premises-liability jurisprudence by transforming the special-aspects doctrine from an objective inquiry, focused on the nature of a readily observable condition itself, to a plaintiff-focused inquiry encompassing the personal inclinations of each particular plaintiff encountering that condition. In setting forth and applying this standard, the majority creates the very subclass of invitees that this Court rejected in *Hoffner*. I disagree with the majority's endorsement of Restatement § 343, comment *f*, Illustration 5, as that illustration is not only inconsistent with our caselaw, but its application will inject unpredictability into

---

doctrine. As explained by former Justice MARKMAN in *Lymon v Freedland*, 501 Mich 933, 936 (2016) (MARKMAN, J., dissenting):

> [W]hen read together, our decisions appear to indicate that the *central inquiry* is whether an open and obvious condition gives rise to an unreasonable risk of harm despite its open and obvious nature and that a hazard may pose an unreasonable risk of harm if: (1) the condition creates a substantial risk of death or severe injury, or (2) the condition is effectively unavoidable. While the first category would seem almost necessarily to give rise to an unreasonable risk of harm—as any potential injury caused by the condition would likely be severe—a condition fitting within the second category would not seem necessarily to have the same impact.

Under this analysis, the common winter conditions of snow and ice seemingly do not constitute the "unreasonably dangerous" condition needed to preclude application of the open and obvious danger doctrine. Again, I need not resolve this issue today, as my conclusion that Livings's desire to reach her place of employment did not render the condition effectively unavoidable is dispositive. This is simply another line of reasoning that calls into question the majority's holding.

13

our premises-liability law, undoubtedly leading to future inconsistent rulings based on the "special circumstances" of each plaintiff at issue. I would apply this Court's well-established open and obvious danger caselaw to conclude that a person's employment is not a relevant consideration in determining whether a condition was itself "effectively unavoidable." For these reasons, I would reverse the Court of Appeals' judgment and remand this case to the trial court for entry of summary disposition in defendant's favor.

Brian K. Zahra

14

ESTATE OF DONNA LIVINGS,

        Plaintiff-Appellee,

v

No. 159692

SAGE'S INVESTMENT GROUP, LLC,

        Defendant-Appellant,

and

T & J LANDSCAPING & SNOW
REMOVAL, INC., and GRAND
DIMITRE'S
OF EASTPOINTE FAMILY DINING,

        Defendants.

---

CLEMENT, J. (*dissenting*).

In *Hoffner v Lanctoe*, 492 Mich 450, 470; 821 NW2d 88 (2012), this Court rejected the prospect of "creat[ing] a new subclass of invitees consisting of those who have a business or contractual relationship" with a premises owner and to whom the premises owner owed a heightened duty of care. Yet today, the majority does just that: it holds "that an open and obvious condition can be deemed effectively unavoidable when a plaintiff must confront it to enter his or her place of employment for work purposes," leaving some invitees treated differently than others. In doing so, the majority largely looks to the Second Restatement of Torts for guidance. I agree with Justice ZAHRA that today's ruling deviates from *Hoffner* and its related caselaw even while purporting not to. However, I am

less sanguine than he is about the affirmative benefits of this area of our caselaw and would be open to considering different approaches. That said, I believe any changes we adopt ought to offer greater clarity than our status quo. I do not believe the Second Restatement offers any improvement on our law, and I therefore would apply *Hoffner* to this case and reverse the Court of Appeals.

As the Chief Justice notes, the traditional rule for negligence actions in Michigan was the doctrine of "contributory negligence," in which any negligence on the part of the injured party was a bar to recovery. Michigan was no outlier in this regard; the contributory-negligence doctrine was, instead, the ordinary rule in the common-law world, a reality reflected in the treatment of the subject by the First Restatement of Torts. Thus, under the First Restatement, a premises owner was "subject to liability for bodily harm caused to business visitors by a natural or artificial condition [on the land] if, but only if, he . . . ha[d] no reason to believe that they [would] discover the condition or realize the risk involved therein . . . ." 2 Restatement Torts, § 343(b), pp 938-939.

> [This rule] thus provided an exemption from liability when a business visitor was injured by a known or obvious danger, regardless of case-specific circumstances. Under this bright-line exemption, the only question of fact that might be allocated to the jury is the question whether the condition was in fact known or obvious. [Marks, *The Limit to Premises Liability for Harms Caused by "Known or Obvious" Dangers: Will It Trip and Fall Over the Duty-Breach Framework Emerging in the Restatement (Third) of Torts?*, 38 Tex Tech L Rev 1, 27 (2005).]

This principle was well illustrated in *Garrett v WS Butterfield Theatres*, 261 Mich 262; 246 NW 57 (1933). There, the 70-year-old plaintiff stepped out of a dimly lit lounge into a bathroom with a 4.5-inch step from the doorway into the room. She fell at the step, was injured, and won a jury trial. We reversed, setting aside the jury's verdict:

2

Different floor levels in private and public buildings, connected by steps, are so common that the possibility of their presence is anticipated by prudent persons. The construction is not negligent unless, by its character, location, or surrounding conditions, a reasonably prudent person would not be likely to expect a step or see it. . . .

Argument is made that the dim lighting of the lounge contrasted with the bright lighting in the toilet room and the color scheme of the toilet floor had such effect upon the visibility of the step as to render the question of negligence in maintaining it for the jury.

Toilets are frequently put in left-over spaces and have vagaries of construction. The door was a warning that there might be a difference in floor levels. The act of opening the door towards him would require a person to pause long enough to have ample opportunity to see the step. The situation contained no element of a trap. A reasonably prudent person, watching where he was going, would have seen the step. Defendant is not under legal duty to prevent careless persons from hurting themselves. [*Id.* at 263-264.]

This principle—that the defendant was under no legal duty to prevent careless persons from hurting themselves—was the essence of the contributory-negligence rule that was traditionally used in Michigan. We reaffirmed it later that same year in another case involving steps, *Boyle v Preketes*, 262 Mich 629; 247 NW 763 (1933). It was only decades later, with the relatively recent decision in *Placek v Sterling Hts*, 405 Mich 638; 275 NW2d 511 (1979), that we largely did away with the doctrine of contributory negligence and instead adopted the rule of comparative negligence, which allows an injured party's damage award to be *reduced* by the degree to which they contributed to their own injury, but not *eliminated*.

The problem we face, however, is that the Second Restatement was written before the comparative-negligence revolution in American tort law. Instead, the Second Restatement was still structured around the *Garrett/Boyle* rule of contributory negligence: "[T]he plaintiff's contributory negligence bars recovery against a defendant whose

3

negligent conduct would otherwise make him liable to the plaintiff for the harm sustained by him." 2 Restatement Torts, 2d, § 467, p 515. As a result, what the Chief Justice describes as the Second Restatement's "tweak[]" of the First Restatement's premises-liability rules concerning open and obvious dangers was the American Law Institute's effort at providing broader avenues for relief *in a contributory-negligence world*. The Second Restatement's premises-liability rules must be understood in this context.

On the one hand, the Second Restatement broadened the premises owner's apparent duty to protect invitees. While § 343 of the First Restatement imposed liability only when a landowner "ha[d] no reason to believe that [invitees would] discover [a dangerous] condition or realize the risk involved therein," the Second Restatement expanded § 343 to impose liability when the owner "should expect that [invitees] will not discover or realize the danger, *or will fail to protect themselves against it*[.]" (Emphasis added.) The Second Restatement thus contemplated that a premises owner would need to protect invitees even from hazards they could reasonably be expected to "discover," so long as the premises owner could expect that invitees would "fail to protect themselves against it . . . ." "The disjunctive clause, 'or will fail to protect themselves against it,' implies extension of possible liability to known or obvious conditions," and thus "sets out a full-blown and ever-present duty of reasonable care owed to invitees." *Limit to Premises Liability*, 38 Tex Tech L Rev at 25, 29. "If the [American Law Institute] intended complete abrogation of the First Restatement's obvious-danger immunity, it would have adopted section 343 as revised in the Second Restatement and said no more." *Id*. at 29.

But the Second Restatement had more to say. It added a new section, § 343A, which acknowledged its basic contributory-negligence regime by asserting that "[a] possessor of

4

land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." 2 Restatement, 2d, § 343A(1), p 218. "The first clause of section 343A, up to the word 'unless,' seems to carry forward from the First Restatement a decision to limit, in some manner, the negligence liability of invitors when invitees are injured by known or obvious dangers." *Limit to Premises Liability*, 38 Tex Tech L Rev at 29. That the premises owner is "not liable," rather than merely partially relieved of liability in proportion to the owner's degree of fault, creates the fundamental tension with comparative-negligence rules. This is reflected in the remainder of § 343A(1), which reimposes liability if "the possessor should anticipate the harm despite such knowledge or obviousness." In short: § 343 broadens liability under the Second Restatement to impose "a full-blown and ever-present duty of reasonable care owed to invitees," *Limit to Premises Liability*, 38 Tex Tech L Rev at 29, a duty which is then limited by the first clause of § 343A(1), with that limitation in turn qualified by the second clause of § 343A(1). Left unexplained in this series of hairpin turns is who makes the decision about whether the parties proceed through each of these gates—and, implicitly, whether they are decisions to be made as a matter of fact or law.

Some courts have refused to try to fit the Second Restatement's square peg into the round hole of comparative negligence. For example, the federal Longshore and Harbor Workers' Compensation Act, 33 USC 901 *et seq*., has been construed as requiring a rule of comparative rather than contributory negligence, and several federal courts have specifically rejected the use of the Second Restatement as the legal standard for analyzing accidents under the statute. In *De Los Santos v Scindia Steam Navigation Co*, 598 F2d

5

480, 486 (CA 9, 1979), the United States Court of Appeals for the Ninth Circuit said that §§ 343 and 343A of the Second Restatement "place limitations on a landowner's liability to an invitee inconsistent with Congress' explicit direction to reject common law rules of contributory negligence and assumption of risk in favor of applying the admiralty concept of comparative negligence."[1] On its review, the United States Supreme Court did not expressly resolve the issue of the applicability of the Second Restatement, but it did affirm the Ninth Circuit. See *Scindia Steam Navigation Co v De Los Santos*, 451 US 156, 179; 101 S Ct 1614; 68 L Ed 2d 1 (1981). In doing so, it also noted that §§ 343 and 343A "do not furnish sure guidance in cases such as this." *Id*. at 168 n 14. See also *Koutoufaris v Dick*, 604 A2d 390, 396 (Del, 1992) (noting, more than a decade after *Scindia*, the debate in the federal courts over the meaning of §§ 343 and 343A).

Michigan did not go this route. Instead, as noted by the Chief Justice, this Court tried to reconcile the Second Restatement with a rule of comparative negligence in *Riddle v McLouth Steel Prod Corp*, 440 Mich 85; 485 NW2d 676 (1992). We insisted that "[t]he adoption of comparative negligence in Michigan does not abrogate the necessity of an

---

[1] Other federal circuits (but not all) had reached similar conclusions about the ability to reconcile the Second Restatement's premises-liability rules with a rule of comparative negligence. See *Griffith v Wheeling-Pittsburgh Steel Corp*, 610 F2d 116, 125 (CA 3, 1979) ("Sections 343 and 343A . . . would apparently relieve a vessel owner of all liability for an unreasonably dangerous condition on board ship if the invitee longshoreman has failed to exercise ordinary care in dealing with that danger, on the theory that a negligent invitee has assumed the risk of injury. . . . [T]hat principle is inconsistent with the clearly stated intention of Congress to abolish the doctrines of contributory negligence and assumption of risk in [such] cases . . . ."), vacated and remanded in light of *Scindia* sub nom *American Commercial Lines, Inc v Griffith*, 451 US 965 (1981); *Johnson v A/S Ivarans Rederi*, 613 F2d 334, 347 (CA 1, 1980) ("Our review . . . has convinced us that sections 343 and 343A are too heavily laden with the prohibited defenses of assumption of the risk and contributory negligence to be followed rigidly as the standard of care . . . .").

initial finding that the premises owner owed a duty to invitees" and held "that the duty element and the comparative negligence standard are fundamentally exclusive—two doctrines to be utilized at different junctures in the determination of liability in a negligence cause of action." *Id*. at 95. This continued to evolve in *Bertrand v Alan Ford, Inc*, 449 Mich 606; 537 NW2d 185 (1995), a case—actually, a consolidated pair of cases—involving injuries suffered by people who failed to navigate steps. We said that a premises owner's "duty is to protect invitees from *unreasonable* risks of harm, [but] the underlying principle is that even though invitors have a duty to exercise reasonable care in protecting their invitees, they are not absolute insurers of the safety of their invitees." *Id*. at 614.

> Consequently, because the danger of tripping and falling on a step is generally open and obvious, the failure to warn theory cannot establish liability. However, there may be special aspects of these particular steps that make the risk of harm unreasonable, and, accordingly, a failure to remedy the dangerous condition may be found to have breached the duty to keep the premises reasonably safe. [*Id*.]

The basic confusion, however, is this: if a premises owner faces no liability *whatsoever* for injuries caused by at least some obvious hazards, what aspect of a premises-liability action does the obviousness of such a hazard relate to—duty or breach? The "ambiguity of the Second Restatement's rule that the land possessor is 'not liable' for harms caused by obvious dangers, 'unless the possessor should anticipate the harm' nonetheless," *Limit to Premises Liability*, 38 Tex Tech L Rev at 39, is the source of the problem. In *Riddle*, 440 Mich at 95, we emphasized "the necessity of an initial finding that the premises owner owed a duty to invitees," supporting an interpretation that premises owners are "not liable" because they owe no duty to the plaintiff—a plaintiff cannot satisfy that "initial finding" as to obvious hazards. But who makes that initial finding—the judge

7

or a jury?  Traditionally, we have said that "the court and jury perform different functions in a negligence case," one of which is that "the court decides the question[] of duty . . . , and the jury determines what constitutes reasonable care under the circumstances." *Williams v Cunningham Drug Stores, Inc*, 429 Mich 495, 500; 418 NW2d 381 (1988).  This comports with the Second Restatement, which says that "[i]n an action for negligence the court determines . . . whether [the alleged] facts give rise to any legal duty on the part of the defendant[.]"  2 Restatement, 2d, § 328B(b), p 151.[2]  The Restatement's categorical "not liable" rule from § 343A(1) would be consistent with a decision made by the court as a matter of law under § 328B(b).  Yet the "unless" clause of § 343A(1), imposing liability if "the possessor should anticipate the harm," appears intrinsically fact-based (and thus a question for the jury).  In *Bertrand*, 449 Mich at 617, we tried to resolve this by claiming that "[i]f the proofs create a question of fact that the risk of harm was unreasonable, the existence of duty as well as breach become questions for the jury to decide."  But this statement that "the existence of duty" is a "question[] for the jury to decide" appears to be a significant departure from our caselaw, is inconsistent with at least § 328B(b) of the Second Restatement, and is not supported by the very case cited by *Bertrand* in support— *Williams*, which held that "the *court* decides the question[] of duty," *Williams*, 429 Mich at 500 (emphasis added).

*Bertrand* struggled not only with the inconsistency between § 343A(1) and § 328B(b) of the Second Restatement; it also struggled with the comments to § 343A itself.

---

[2] To be clear, we did not cite Restatement § 328B(b) in *Williams*, but our ruling comported with the Restatement, which merely recited the traditional rule that the issue of duty is a question of law for the court to decide.

8

In *Bertrand*'s companion case, the plaintiff "stumbled and fell on an unmarked cement step" while leaving a public restroom. *Bertrand*, 449 Mich at 618. The plaintiff "alleged that the defendant was negligent in failing to mark the step with a contrasting color, [or] by failing to warn of the additional step . . . ." *Id*. We reversed the Court of Appeals' resuscitation of the plaintiff's case and took the matter out of the hands of a jury because "[t]he plaintiff's only asserted basis for finding that the step was dangerous was that she did not see it," but she "ha[d] not presented any facts that the step posed an *unreasonable* risk of harm . . . ." *Id*. at 621, rev'g *Maurer v Oakland Co Parks & Recreation Dep't*, 201 Mich App 223 (1993). This meant that "the plaintiff ha[d] failed to establish anything unusual about the step that would take it out of the rule of *Garrett* and *Boyle*." *Id*. By reaffirming *Garrett* and *Boyle*, we reaffirmed a "no duty" theory for open and obvious hazards in premises-liability cases, making the plaintiff's failure to see the open, obvious, and ordinary step a complete liability shield for the defendant as a matter of law. On the other hand, the dissent noted that the Restatement and its comments "provide that the landowner owes a duty to take reasonable precautions to protect invitees where their attention may be distracted, or they are forgetful." *Id*. at 627 (LEVIN, J., dissenting). This is true; the Restatement says that "reason to expect harm to the visitor from known or obvious dangers may arise . . . where the possessor has reason to expect that the invitee's attention may be distracted, . . . or [that he] will forget what he has discovered, or fail to protect himself against it." 2 Restatement, 2d, § 343A, comment *f*, p 220. In my view, both the debate between the majority and dissent in *Bertrand*, as well as *Bertrand*'s tension with *Williams*, expose the ambiguity in the Second Restatement's treatment of this subject.

9

In light of this confusion, we "attempted to more fully reconcile [our] no-duty rule with section 343A," *Limit to Premises Liability*, 38 Tex Tech L Rev at 42, in *Lugo v Ameritech Corp*, 464 Mich 512, 516; 629 NW2d 384 (2001). There, we held that "the open and obvious doctrine should not be viewed as some type of 'exception' to the duty generally owed invitees, but rather as an integral part of the definition of that duty." Thus, our rationale for the open and obvious danger doctrine being a potentially complete shield for a premises owner's liability was because we said that it ultimately related to the duty the premises owner owed to invitees. The only harms that we held the premises owner should "anticipate" were harms caused by a hazard that had "special aspects"—"something out of the ordinary . . . about a particular open and obvious danger in order for a premises possessor to be expected to anticipate harm from that condition." *Id*. at 525. This "special aspects" doctrine continues to be what we use. In *Hoffner*, 492 Mich at 471, we emphasized that it was "impermissibl[e] [to] shift the focus from an objective examination of the *premises* to an examination of the subjective beliefs of the *invitee*."

Whatever the faults of this duty-based open and obvious danger analysis in premises-liability actions, it appears to me to at least have the benefit of greater clarity and ease of application than the Second Restatement. By emphasizing that the open and obvious danger doctrine relates to the duty owed to the invitee, *Lugo* makes clear that the question is one that a judge should resolve, rather than a jury, because "the duty question is solely for the court to decide . . . ." *Moning v Alfono*, 400 Mich 425, 436-437; 254 NW2d 759 (1977). Indeed, the separate opinion criticizing *Lugo*'s reasoning acknowledged that "the Restatement approach can be somewhat difficult to apply because it bears some similarity to the contributory negligence doctrine." *Lugo*, 464 Mich at 533 (CAVANAGH, J.,

10

concurring).[3] It also acknowledged that "the Restatement does not explicitly lay out the standard of care, [but] simply says that a possessor of land 'is subject to liability' in § 343 cases, or 'is not liable' in § 343A cases." *Id*. at 531. Or consider the Restatement illustration highlighted by the majority. It says:

> 5. A owns an office building, in which he rents an office for business purposes to B. The only approach to the office is over a slippery waxed stairway, whose condition is visible and quite obvious. C, employed by B in the office, uses the stairway on her way to work, slips on it, and is injured. Her only alternative to taking the risk was to forgo her employment. A is subject to liability to C. [2 Restatement, 2d, § 343A, comment *f*, p 221.]

As the majority notes, this illustration "maps almost perfectly onto the current case." But given the contradictory nature of § 343A and its comments, see *Koutoufaris*, 604 A2d at 395, we have little explanation of *why* "A is subject to liability to C"—in particular, the Restatement offers inconsistent guidance about what the relative roles are for the judge and jury in reaching this result. "Both the rule and its comments fail to clearly indicate whether 'not liable' means no duty or no breach and, in turn, who usually decides whether 'the possessor should anticipate the harm' nonetheless, the judge or the jury." *Limit to Premises Liability*, 38 Tex Tech L Rev at 39.

---

[3] Although styled as a "concurring" opinion, Justice CAVANAGH's opinion is more accurately an opinion concurring in the judgment only. "A judge who doesn't agree with the majority opinion may file a dissenting opinion to explain his or her vote in the case. Likewise, a judge may concur in the judgment to express disagreement with the majority's reasoning or write a 'simple concurrence,' in which the judge agrees with both the reasoning and result of the majority opinion but wishes to write separately to make some other point." Garner et al, The Law of Judicial Precedent (2016), pp 182-183. Michigan appellate courts have not been disciplined about expressing this distinction in our opinions, however.

Under *Lugo* and *Hoffner*, Michigan has an answer to this conundrum.  Because the open and obvious danger doctrine relates to whether the premises owner owes a duty to invitees, it is a question of law for the court to resolve.  I am not all that wedded to this as the best answer we could reach, but I prefer it to continuing to wrestle with the ambiguities of the Second Restatement.  As a result, without an alternative as clear as our status quo, I would keep employing our status quo; and, because I do not believe the majority's conclusions square with *Hoffner*, I dissent.

Elizabeth T. Clement

WELCH, J., did not participate in the disposition of this case because the Court considered it before she assumed office.